# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**Jill Sharp,**

      **Plaintiff,**

v.                                      Case No. 17-cv-2463-JWL

**Owens Corning Insulating Systems, LLC,**

      **Defendant.**

## MEMORANDUM & ORDER

Plaintiff Jill Sharp filed this lawsuit against her former employer asserting claims of gender discrimination and harassment in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq., and disability discrimination in violation of the Americans with Disabilities Act ("ADA"), *as amended by* ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553, 42 U.S.C. § 12101 et seq.[1] This matter is presently before the court on defendant's motion for summary judgment on all claims (doc. 30). As explained below, the motion is denied as to plaintiff's claim of gender harassment and is otherwise granted.

I.      **Facts**

The following facts are uncontroverted, stipulated in the pretrial order, or related in the light most favorable to plaintiff as the nonmoving party. Defendant Owens Corning Insulating Systems, LLC operates a fiberglass insulation production facility in Kansas City, Kansas. Plaintiff

---

[1] In the pretrial order, plaintiff asserted a claim of retaliation under the ADA. She has expressly withdrawn that claim in her response to the motion for summary judgment.

Jill Sharp began her employment as a production employee with defendant in May 1998. Plaintiff was employed by defendant for many years without incident. In March 2014, plaintiff began training as an Unbonded Technician ("UBT") on C shift at the production facility. In June 2014, plaintiff was certified as a UBT Operator on defendant's U3 production line, after which she was transferred to B shift as a UBT Operator. In March 2015, plaintiff was transferred back to C shift as a UBT Operator on the U3 production line and, at that time, she began working with fellow UBT Operators Gary Barrier and Bill Cockrum. Plaintiff worked with Mssrs. Barrier and Cockrum for approximately one year, during which time she was the only woman working in that area of the production line on that shift. Plaintiff contends that Mssrs. Barrier and Cockrum subjected her to gender-based harassment during the year that she worked with them, including refusing to provide training to her; refusing to help plaintiff on the job, refusing to answer any work-related questions that she had; and essentially giving plaintiff the "silent treatment" on the job. Plaintiff testified that Mssrs. Barrier and Cockrum intentionally altered the settings on her machine to create problems for plaintiff during her shift. When Mssrs. Barrier and Cockrum talked about plaintiff to others in the workplace, they referred to her only as "that girl" or "that woman."

In late November 2015, plaintiff called off work for two days by requesting FMLA leave. Plaintiff, however, had already exhausted her available FMLA leave such that her two days off work were unexcused absences. Pursuant to the attendance provision set forth in the Labor Agreement governing plaintiff's employment with defendant, defendant could have terminated plaintiff's employment on November 24, 2015 for excessive unexcused absences from work. On the recommendation of Greg Edwards, defendant's Human Resource manager for the production

facility, defendant decided to place plaintiff on a Continued Employment Agreement ("CEA") in lieu of terminating her employment. Plaintiff executed the CEA on December 8, 2015. One of the conditions of the CEA was that plaintiff had to comply with all company policies and maintain satisfactory performance in all job-related activities. She further agreed that if she failed to meet any of the conditions of the CEA for a period of three years, her employment would be terminated.

The next morning, on December 9, 2015, plaintiff reported to work at 7:00am. Shortly thereafter, an employee reported to Operations Leader Josh Ballinger that plaintiff was stumbling, slurring her words, and smelled of alcohol. Mr. Ballinger went to plaintiff's work station and observed that plaintiff's eyes looked glassy and that she was slurring her words. Mr. Ballinger asked Alan Crafton, the on-duty Shift Leader, to conduct an independent observation of plaintiff pursuant to defendant's reasonable suspicion protocol, which Mr. Crafton did. Mr. Edwards, at Mr. Ballinger's request, also conducted an observation of plaintiff for approximately 10 minutes. Mr. Edwards observed that plaintiff was slumped in her chair, appeared very sweaty and glassy-eyed and was slurring her words. Mr. Edwards then asked plaintiff to accompany him to the medical center to submit to a "reasonable suspicion" alcohol test. Plaintiff complied and the test indicated a Blood Alcohol Content ("BAC") of .041% at 10:20am. Under defendant's Substance Abuse Policy, plaintiff's BAC in excess of .04% made her "unfit for duty" and constituted a violation of plaintiff's CEA.

Rather than terminating plaintiff's employment for violating her CEA, defendant offered plaintiff a second CEA. On December 18, 2015, plaintiff executed her second CEA. A condition of plaintiff's second CEA was that she had to comply with all company policies and maintain satisfactory performance in all job-related activities. Another condition was plaintiff's mandatory

3

participation in defendant's Employee Assistance Program ("EAP") and her agreement to comply with any recommendations made by the EAP. Mandatory participation in the EAP program is a standard condition at defendant for any employee who tests positive for drugs or alcohol and whose employment is not terminated. Plaintiff agreed that if she failed to meet any of the conditions of the second CEA for a period of three years, her employment would be terminated.

In March 2016, Union Steward Tom Sumpter reported to Alana Szkatulski, defendant's Human Resource generalist, that plaintiff was being harassed by Mssrs. Cockrum and Barrier, her coworkers on C shift. According to Mr. Sumpter, plaintiff had informed him that Mssrs. Cockrum and Barrier were harassing her and were reluctant to provide her with adequate training to perform her job duties as a UBT. Ms. Szkatulski began an investigation into plaintiff's concerns in which she interviewed plaintiff as well as several other employees. During her interview with Ms. Szkatulski, plaintiff requested to move shifts. On March 24, 2016, Ms. Szkatulski reported back to Mr. Sumpter that her investigation revealed potential issues with plaintiff's performance as a UBT, but that Ms. Szkatulski was recommending that plaintiff's request to be moved to a different shift be granted. Plaintiff and her coworkers were on furlough from April 4, 2016 through April 17, 2016. When plaintiff returned from furlough on April 18, 2016, plaintiff was transferred from C shift to A shift, where she remained until the termination of her employment in June 2016.

On April 26, 2016, defendant conducted a second investigation into plaintiff's concerns, stemming from a March 30, 2016 complaint that plaintiff had made on defendant's Business Code of Conduct ("BBC") hotline. In her complaint to the hotline, plaintiff alleged that Mssrs. Cockrum and Barrier were treating her differently and had a problem with her because she is a woman. This second investigation was conducted by Patrick Mills from defendant's corporate offices in Toledo,

4

Ohio. During the course of his on-site investigation, Mr. Mills interviewed numerous employees in the facility. Mr. Mills found no evidence of any violation of any policy and concluded that plaintiff was creating friction on the work team by asking others to do her work for her and refusing or failing to learn the skills required to perform the role of a UBT. Plaintiff testified that, when defendant moved her to A shift on April 18, 2016, she obtained the result she desired to obtain when she filed the BCC report in March 30, 2016.

On June 17, 2016, plaintiff reported to work for her shift beginning at 11:00pm. Midway through her shift, the U3 and U4 lines began experiencing significant mechanical issues and numerous employees were working frantically to keep up production while attempting to remedy the issues. In the midst of the mechanical issues, union steward Dirk Bower pointed out to plaintiff's supervisor, Daniel Riggs, that plaintiff was sitting in a chair rather than assisting with the ongoing issues. Mr. Riggs testified that he observed plaintiff slumped over in a chair on the production floor, attempted to rouse her verbally, and concluded that plaintiff was asleep. Mr. Riggs brought union steward Dennis Young over to observe plaintiff sleeping so that he would have a witness to the incident. After approximately 20 or 30 minutes, Mr. Riggs woke plaintiff up, asked whether she was okay and told her that she needed to get back to work. The following day, defendant notified plaintiff that she had been suspended pending an investigation into her conduct during the previous night's shift.

Greg Edwards investigated plaintiff's conduct and concluded that plaintiff had been sleeping during her shift on June 17, 2016. Sleeping on duty is a violation of company policy and an employee can be terminated for it. Following his investigation, Mr. Edwards recommended the termination of plaintiff's employment for violating the conditions of her second CEA. Todd

Yoho, defendant's Plant Manager, approved that recommendation.  Plaintiff's employment was terminated effective July 7, 2016.  Plaintiff grieved the termination of her employment pursuant to the labor agreement governing her employment with defendant and the grievance was denied.  On January 13, 2017, an arbitration hearing was held on plaintiff's grievance.  On March 3, 2017, a neutral arbitrator concluded that plaintiff had been sleeping on the job and that there was just cause for the termination of plaintiff's employment.

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

## II. Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a).  A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc.*, 726 F.3d at 1143 (quotation omitted).  "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id.* at 1143-44.

## III. Gender-Based Discriminatory Discharge Claim

6

In the pretrial order, plaintiff contends that defendant terminated her employment based on her gender in violation of Title VII. As plaintiff has no direct evidence of discrimination, her claim is analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012). Under *McDonnell Douglas*, plaintiff has the initial burden of establishing a prima facie case of discrimination. *Id*. To set forth a prima facie case of discrimination, plaintiff must establish "(1) membership in a protected class and (2) an adverse employment action (3) that took place under circumstances giving rise to an inference of discrimination." *Id*. (citing *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007)). If she establishes a prima facie case, the burden shifts to defendant to assert a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. If defendant meets this burden, summary judgment against plaintiff is warranted unless she introduces evidence "that the stated nondiscriminatory reason is merely a pretext for discriminatory intent." *Id*. (citing *Simmons v. Sykes Enters.*, 647 F.3d 943, 947 (10th Cir. 2011)).

As an initial matter, defendant asserts that plaintiff cannot establish a prima facie case of discrimination because she cannot show that she was treated less favorably than similarly situated male employees. Because plaintiff is not required to show differential treatment of similarly situated employees to satisfy her prima facie burden, *see Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005) (comparison to similarly situated employees is not required as part of a plaintiff's prima facie case; the relevant prima facie element may be framed more broadly, requiring only a "showing of circumstances giving rise to an inference of discrimination"), the court rejects this argument. Moreover, because plaintiff's "similarly situated" evidence is the only evidence that plaintiff offers to establish pretext, the court believes that the correct approach is to

7

analyze that evidence at the pretext stage. *See Hannah v. Sandia Corp.*, 2017 WL 6375605, at *7 (D.N.M. Dec. 13, 2017) (deciding motion on pretext issue where plaintiff relied on same evidence to support pretext and third element of prima facie case); *Davis v. Dillon Companies, Inc.*, 2014 WL 4980430, at *6 (D. Kan. Oct. 6, 2014) (to avoid a duplication of analysis at the prima facie and pretext stages where plaintiff relied on same evidence at both stages, court moved directly to pretext analysis); *see also Sorbo*, 432 F.3d at 1173-74 (10th Cir. 2005) (where comparison to others similarly situated is the method chosen by the plaintiff to raise an inference of discrimination, evidence may be analyzed at the pretext stage).

Having rejected defendant's argument concerning plaintiff's prima facie case, the court turns to whether defendant has met its burden to articulate a legitimate, nondiscriminatory reason for plaintiff's discharge. "This burden is one of production, not persuasion; it can involve no credibility assessment." *Carter v. Pathfinder Energy Servs., Inc.,* 662 F.3d 1134, 1149 (10th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142 (2000)). The Tenth Circuit has characterized this burden as "exceedingly light," and the court finds that defendant has carried it here. *See id*. According to defendant, plaintiff's employment was terminated after plaintiff violated her second CEA by sleeping while on duty. The burden of proof, then, shifts back to plaintiff to show that defendant's proffered reason is pretextual.

Evidence of pretext "may take a variety of forms," including evidence tending to show "that the defendant's stated reason for the adverse employment action was false" and evidence tending to show "that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." *Id*. at 1150 (quoting *Kendrick v. Penske Transp. Servs., Inc*., 220 F.3d 1220, 1230 (10th Cir. 2000)). A plaintiff may also show

8

pretext with evidence that the defendant had "shifted rationales" or that it had treated similarly situated employees differently. *Crowe v. ADT Servs., Inc*., 649 F.3d 1189, 1197 (10th Cir. 2011). In essence, a plaintiff shows pretext by presenting evidence of "weakness, implausibility, inconsistency, incoherency, or contradiction in the employer's stated reasons, such that a reasonable jury could find them unconvincing." *Debord v. Mercy Health System of Kansas, Inc*., 737 F.3d 642, 655 (10th Cir. 2013). In determining whether the proffered reason is pretextual, the court examines "the facts as they appear to the person making the decision, not as they appear to the plaintiff." *Id*. The court does not "ask whether the employer's proffered reasons were wise, fair or correct" but only whether "the employer honestly believed those reasons and acted in good faith upon those beliefs." *Id*.

Plaintiff contends that a reasonable jury can find pretext in this case by comparing defendant's treatment of her with its treatment of male employees who, like plaintiff, violated company policy by sleeping on the job. To be sure, evidence that a similarly situated employee received better treatment can suggest that the employer's alleged nondiscriminatory reason is pretextual. *Roberts v. International Business Machines Corp*., 733 F.3d 1306, 1310 (10th Cir. 2013). As the Circuit has explained, however, "to provide a basis for reliable comparison, the other employee must, in fact, be similarly situated—that is, reporting to the same supervisor, held to the same standards, and afoul of those standards to at least the same degree. And it falls on the employee alleging discrimination to rule out alternative explanations for the differential treatment." *Id*. (citing *Timmerman v. U.S. Bank, N.A*., 483 F.3d 1106, 1120-21 (10th Cir. 2007)).

Plaintiff contends that numerous male employees were caught sleeping on the job and that defendant did not terminate the employment of those employees. The undisputed evidence

demonstrates that, to the extent other employees were caught sleeping on duty, none of those employees was working pursuant to a second CEA at the time of the violation. According to defendant, then, plaintiff cannot demonstrate that any employees were similarly situated to her because, unlike plaintiff, no other employee was working under a second CEA. Plaintiff contends that defendant's argument puts too fine a point on the "similarly situated" requirement. The court believes that the Circuit would conclude that plaintiff, to establish pretext, must compare herself to other employees who, like her, were working under a second CEA. *See Lobato v. New Mexico Environment Dept.*, 733 F.3d 1283, 1292 (10th Cir. 2013) (plaintiff could not establish pretext by comparing defendant's treatment of another employee who, unlike plaintiff, was not a probationary employee). But even putting aside the fact that no other employee had a second CEA, the evidence is insufficient to establish that any other employees were similarly situated to plaintiff. The most analogous employee is a male employee who was working under his first CEA when he was caught sleeping on the job. But plaintiff does not dispute that his employment was effectively terminated for that violation and, thus, the comparison cannot establish pretext. *See Smith v. Global Staffing*, 621 Fed. Appx. 899, 903 (10th Cir. June 17, 2015) (no pretext where undisputed evidence demonstrated that plaintiff's treatment was the same as employees who were similarly situated to him).[2]

The male employees to whom plaintiff seeks to compare herself are not similarly situated to her under the Circuit's standard. In making her argument, plaintiff relies almost entirely on the

---

[2] The record reflects that management informed this employee that his employment would be terminated as a result of the violation of his CEA. Because that employee was eligible for retirement, however, defendant offered him the opportunity to retire in lieu of termination.

deposition testimony of Kenneth Bolton, an employee who retired from defendant in July 2013 and then became the union's business manager. Mr. Bolton testified that several male employees were not terminated despite "sleeping at the plant."[3] But Mr. Bolton worked for defendant for more than 40 years and his testimony fails to shed any light on whether any of these male employees was caught sleeping in the plant during the same time frame that Mr. Riggs observed plaintiff sleeping on the production floor. *See Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 540 (10th Cir. 2014) (similarly situated employees must share the same supervisor, otherwise differences in disciplinary decisions "may be explained by the fact that the discipline was administered by different supervisors, or that the events occurred at different times when the company's attitudes toward certain infractions were different"). His testimony does not indicate that Mr. Riggs observed any male employees sleeping on the job (and, in fact, it is undisputed that Mr. Bolton retired from defendant before Mr. Riggs became employed at the facility). *See Roberts*, 733 F.3d at 1310 (employees are similarly situated only if they report to same supervisor). In fact, his testimony does not reflect that any member of management observed any male employees sleeping on the production floor. *See Smothers*, 740 F.3d at 541-42 (similarly situated employees must have engaged in conduct of comparable seriousness). Thus, while Mr. Bolton's testimony reflects that certain male employees at some point over the course of Mr. Bolton's lengthy employment with defendant slept during meetings or slept in offices, his testimony does not permit an inference that any of these male employees were sleeping on the

---

[3] Plaintiff also asserts that certain supervisors slept in their offices during shifts, but those individuals are not similarly situated to her. *See Jones v. Denver Post Corp.*, 203 F.3d 748, 752–53 (10th Cir. 2000) (nonsupervisory employees generally not deemed similarly situated to supervisory employees with respect to disciplinary matters).

11

production floor, were observed by management (let alone Mr. Riggs) while doing so or that any of these incidents occurred during the pertinent time frame. And, as noted earlier, none of these employees was working under a CEA at the time they allegedly slept on the job.[4]

For the foregoing reasons, plaintiff cannot establish pretext by comparing defendant's treatment of her with its treatment of male employees. And plaintiff has come forward with no other evidence or argument on the pretext issue. Thus, plaintiff has failed to meet her burden of demonstrating pretext and summary judgment is warranted on plaintiff's claim of gender-based discriminatory discharge.

**IV.  Gender-Based Harassment Claim**

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). The "Supreme Court has held that this language is not limited to 'economic' or 'tangible' discrimination, but instead is broad enough to protect individuals from working in a discriminatorily hostile or abusive environment." *Bird v. West Valley City*, 832 F.3d 1188, 1205 (10th Cir. 2016) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) and *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To prevail on her hostile work environment claim, plaintiff must "show that

---

[4] Plaintiff asserts that Wayne Bragdon "had as many as 15 sleeping violations during his Continued Employment Agreement before ultimately sustaining a job termination." The record does not support this assertion in any respect. Contrary to plaintiff's representation, Mr. Bolton testified that Mr. Bragdon was on a CEA and made "15 or 16 mistakes" before defendant terminated his employment. There is no evidence that any of these mistakes were related to sleeping on the job and, in fact, no evidence as to the nature of the mistakes at all.

12

a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Id.* (quoting *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007)). Severity and pervasiveness, however, are not enough; plaintiff must demonstrate "severe and pervasive harassment based on gender." *Id.* (citing *Chavez v. New Mexico*, 397 F.3d 826, 833 (10th Cir. 2005)).

Defendant urges that summary judgment is appropriate because the conduct about which plaintiff complains is not sufficiently severe or pervasive to alter the conditions of plaintiff's employment. In determining whether conduct in the workplace is sufficiently severe or pervasive to create an abusive working environment, the court looks at factors such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hernandez v. Valley View Hosp. Ass'n,* 684 F.3d 950, 958 (10th Cir. 2012). The inquiry is particularly unsuited for summary judgment because it is quintessentially a question of fact." *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1144 (10th Cir. 2008).

Analyzing these factors and viewing the evidence in plaintiff's favor, there is a genuine issue of material fact whether the conduct reflected in the record was pervasive enough to find in plaintiff's favor. The record demonstrates that plaintiff worked with Mssrs. Barrier and Cockrum on the C Shift for just over one year and that, during that time, they were the only 3 UBT operators working on the C Shift. In other words, plaintiff was the only woman working in that area of the production line. The evidence reflects that Mssrs. Barrier and Cockrum refused to provide training to plaintiff and refused to help plaintiff on the job, refused to answer any work-related

13

questions that she had, and essentially gave plaintiff the "silent treatment" on the job. Plaintiff testified that Mssrs. Barrier and Cockrum intentionally altered the settings on her machine to create problems for plaintiff during her shift. When Mssrs. Barrier and Cockrum talked about plaintiff to others in the workplace, they referred to her only as "that girl" or "that woman." There is also evidence that Mssrs. Barrier and Cockrum told others in the workplace that they "did not want a woman" working in their area of the production line.[5] The evidence is sufficient to permit a reasonable jury to conclude that Mssrs. Barrier's and Cockrum's conduct was based on plaintiff's gender and was pervasive enough to alter the conditions of plaintiff's employment and create an abusive working environment. *See Bertsch v. Overstock.com*, 684 F.3d 1023, 1025-26, 1028 (10th Cir. 2012) (factual issue existed on pervasiveness where evidence showed that co-worker treated plaintiff "like a servant," refused to look at her while they talked, and ridiculed her in meetings).

Defendant contends that summary judgment is nonetheless required because plaintiff has not established that defendant responded inadequately to harassment by Mssrs. Barrier and Cockrum of which it knew or should have known. *See Vance v. Ball State University*, 570 U.S. 421 (2013) ("If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions."); *Bertsch v. Overstock.com*, 684 F.3d 1023,

---

[5] Defendant objects to this evidence on hearsay grounds but does not elaborate on that objection other than to suggest the statements are inadmissible because plaintiff never heard Mssrs. Barrier or Cockrum make those statements. The objection is overruled, as the statements appear to be offered to show the motivation underlying Mssrs. Barrier's and Cockrum's treatment of plaintiff rather than to prove the truth of the statements themselves. Thus, while the question of the admissibility of this evidence may arise again at trial, the court deems it appropriate at this stage to consider such evidence in determining whether plaintiff has created a factual dispute on pervasive gender harassment.

1028 (10th Cir. 2012) (defendant's prompt, remedial action precludes employer liability for coworker harassment). An "employer's liability for allowing a sexually hostile work environment after it is reported to the employer by the employee arises only if the employer fails to take adequate remedial and preventative responses to any actually or constructively known harassment." *Id*. (quoting *Holmes v. Utah, Dep't. of Workforce Servs*., 483 F.3d 1057, 1069 (10th Cir. 2007)). Defendant highlights that it transferred plaintiff to a different shift after promptly investigating her claims of harassment. But factual disputes remain concerning defendant's liability that must be resolved by a jury. If a jury finds pervasive harassment, then the jury might also conclude that defendant should have known about the harassment and taken remedial measures to stop it at some point prior to March 2016. *See Harsco Corp. v. Renner*, 475 F.3d 1179, 1188 (10th Cir. 2007) (pervasiveness of sexual harassment can properly lead to an inference of knowledge). Moreover, although defendant contends that the alleged harassment ceased when plaintiff was transferred to a different shift,[6] factual disputes remain about the adequacy of defendant's response in light of evidence that Mssrs. Barrier and Cockrum were not counseled in any way about their alleged conduct. *See Baty v. Willamette Indus., Inc*., 172 F.3d 1232, 1243-44 (10th Cir. 1999) (defendant's refusal to discipline its employees for harassment is relevant to analysis of the adequacy of employer's response), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

For the foregoing reasons, a jury trial is required on plaintiff's gender harassment claim.[7]

---

[6] Plaintiff testified, however, that she had contact with Mssrs. Barrier and Cockrum during shift changes and that they continued to treat her differently based on her gender.
[7] The parties' submissions briefly touch on whether and to what extent plaintiff was subjected to gender-based harassment by one or more members of management, particularly Chris Carlson and

## V. Disability Discrimination Claim

The ADAAA prohibits employers from discriminating against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). In the pretrial order, plaintiff contends that defendant violated this provision when it terminated her employment. Specifically, plaintiff alleges that defendant terminated plaintiff's employment based on a perceived disability—alcoholism. Because plaintiff concedes that her claim relies on circumstantial evidence, the claim is analyzed under the framework articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Dewitt v. Southwestern Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017). Thus, plaintiff must first establish a prima facie case. *Id.* at 1307. To establish a prima facie case of disability discrimination under the ADAAA, plaintiff must present evidence that (1) she is disabled within the meaning of the ADAAA; (2) she is qualified to perform the essential functions of her job with or without accommodation; and (3) she was terminated because of her disability. *Id.* at 1308.

Congress has provided three statutory definitions for "disability" under the ADAAA: A plaintiff may show (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. *Adair v. City of Muskogee*, 823 F.3d 1297, 1305 (10th Cir. 2016)

---

Adam Peacock. Because plaintiff's claim survives regardless of any additional incidents by members of management, the court need not address these specific incidents. The court does, however, reject defendant's argument that plaintiff cannot rely on allegations concerning these individuals because she failed to include those specific allegations in her charge of discrimination or in the pretrial order. Defendant directs the court to no case law suggesting that the Circuit requires that level of specificity in the charge or in the pretrial order, both of which clearly articulated a claim of gender harassment.

(quoting 42 U.S.C. § 12102(1)). In the pretrial order, plaintiff contends that defendant discriminated against her based on a perceived disability under subsection (C). An individual meets the requirement of "being regarded as having such an impairment" under prong (C) of the definition of disability if he or she has been subjected to a prohibited action because of a perceived physical or mental impairment "whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C.§ 12102(3)(A). In other words,

> [u]nlike an impairment as defined in subsections (A) or (B), an impairment under § 12102(1)(C) need not limit or even be perceived as limiting a major life activity— the employer need only regard the employee as being impaired, whether or not the employer also believed that the impairment prevented the employee from being able to perform a major life activity. Under the ADAAA, the only qualification for an impairment in a "regarded as" claim is that the impairment not be "transitory and minor." *Id.* § 12102(3)(B); *see id.* ("Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.").

*Adair v. City of Muskogee*, 823 F.3d 1297, 1305-06 (10th Cir. 2016) (Today, a plaintiff bringing a "regarded as" claim "needs to plead and prove only that she was regarded as having a physical or mental impairment."); *accord* 29 C.F.R.§ 1630.2(g)(3) & (j)(2).

But the ADA expressly states that employers may prohibit the use of alcohol at the workplace; may require that employees not be under the influence of alcohol at work; and may hold employees who use alcohol to the same qualifications standards for employment or job performance and behavior that the employer holds other employees, even if any unsatisfactory performance or behavior is related to the use of alcohol. *See* 42 U.S.C. § 12114(c). In this case, the undisputed facts demonstrate that defendant's actions were authorized by the ADA such that it did not unlawfully regard plaintiff as having an impairment. Plaintiff alleges that defendant perceived her as an alcoholic (or as having an "alcohol problem") when it mandated her

17

participation in an EAP program as a condition of her continued employment after she failed a "reasonable suspicion" alcohol test. But it is undisputed that mandatory participation in the EAP program was a standard condition for any employee who tested positive for drugs or alcohol at work and whose employment was not terminated. And because plaintiff does not dispute that the EAP requirement stemmed directly from the fact that plaintiff had alcohol in her system at work and tested positive for alcohol at work, the ADA affords her no protection. *See Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665 (7th Cir. 2011) (plaintiff's ADA claim could not survive summary judgment where record established that termination was based on plaintiff's testing positive for alcohol at work) (citing 42 U.S.C. § 12114(c)(4)).

Moreover, the record supports no inference that the termination of plaintiff's employment was based on defendant's perception that plaintiff was an alcoholic or had an alcohol problem. There is no evidence in the record that defendant's management ever raised any concerns about plaintiff's use of alcohol or suggested that plaintiff had an alcohol problem, aside from requiring her to participate in the company's EAP program after she tested positive for having alcohol in her system at work. No management employee ever told plaintiff that they suspected she had an alcohol problem. There is no evidence that defendant believed that plaintiff, in June 2016, was sleeping on the job because of alcohol consumption. There is no evidence that management, aside from the one positive test that was administered in December 2015, ever asked plaintiff to submit to an alcohol test or otherwise suggested to plaintiff that she had an alcohol problem.[8] Plaintiff's

---

[8] Plaintiff asserts that "on multiple occasions, plaintiff was observed and tested, and on several occasions no evidence was found of her being under the influence." While such evidence might tend to show that defendant perceived plaintiff as having an alcohol problem, no such evidence

18

evidence does suggest that her coworkers may have complained to management on occasion that plaintiff was "drunk" at work.[9] That evidence, however, reflects that management, in response to those complaints, observed plaintiff in the workplace and concluded that there was "no grounds" to test plaintiff for alcohol use. There is simply nothing in the record from which a jury could conclude that defendant, in June 2016, perceived plaintiff as having an alcohol problem or remotely considered plaintiff's past alcohol use in deciding to terminate plaintiff's employment.

In short, there is simply no evidence in the record from which a reasonable jury could conclude that defendant regarded plaintiff has having a physical impairment or that defendant terminated plaintiff's employment based on a perceived impairment. Summary judgment on this claim is warranted.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment is granted in part and denied in part. It is denied as to plaintiff's claim of gender harassment and is otherwise granted.

**IT IS SO ORDERED.**

Dated this 13th day of August, 2018, at Kansas City, Kansas.

---

appears in the record. The citation set forth by plaintiff in support of that assertion does not remotely support it.

[9] To the extent plaintiff's coworkers may have perceived her as having an alcohol problem that evidence does not support an inference that management or any decisionmakers perceived her as having an alcohol problem.

19

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge